UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, | |
| Plaintiff, | **COMPLAINT** |
| v. | |
| C. L. HAUTHAWAY & SONS CORP., | |
| Defendant. | |

## INTRODUCTION

1.    Defendant C.L. Hauthaway & Sons Corp. ("C.L. Hauthaway") operates a coatings and adhesives manufacturing facility adjacent to the Saugus River at 638 Summer Street, Lynn, Massachusetts (the "Facility"). The company uses numerous hazardous chemicals, including toluene diisocyanate ("TDI"), an extremely hazardous chemical. By operating the Facility without, among other things, preparing a risk management plan to reduce or eliminate the potential for releases of TDI, C.L. Hauthaway has violated the chemical accident prevention requirements of the Federal Clean Air Act. Additionally, by discharging industrial stormwater into the Saugus River without applying for and obtaining a federal industrial stormwater discharge permit, C.L. Hauthaway has violated the Federal Clean Water Act.

2.    The Facility is located within an area recognized as one of the most biologically significant estuaries in Massachusetts north of Boston. The Saugus River is a state-listed impaired waterbody. Polluted stormwater, including polluted industrial stormwater, is the leading cause of water quality impairment in Massachusetts.

3.    The Facility is immediately adjacent to the Saugus River, within a flood zone, in a densely populated mixed industrial/residential neighborhood. TDI is toxic, highly reactive, and

explosive when exposed to heat. In the case of an accidental release, TDI is known to cause or may reasonably be expected to cause death, injury, or serious adverse effects to human health or the environment. TDI is also reactive with water.

4.     The Commonwealth of Massachusetts (the "Commonwealth") brings this civil suit to enforce the requirements of the Federal Clean Air Act, 42 U.S.C. § 7401, *et seq.,* and the Federal Clean Water Act, 33 U.S.C. § 1251, *et seq*. The Commonwealth seeks injunctive relief, civil penalties, and other relief the Court deems appropriate to redress C.L. Hauthaway' s failure to comply with Federal chemical accident prevention requirements and unlawful discharges of pollution.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over the parties and the subject matter of this action pursuant to Section 304(a) of the Federal Clean Air Act ("CAA"), 42 U.S.C. § 7604(a), Section 505(a)(1)(A) of the Federal Clean Water Act ("CWA"), 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331 (an action arising under the laws of the United States).

6.     On January 13, 2020 plaintiff provided notice of C.L. Hauthaway's violations of the CAA and the CWA, and of its intention to file suit against C.L. Hauthaway (the "Notice Letter"), to the Administrator of EPA; the Administrator of EPA Region 1; the Commissioner of the Massachusetts Department of Environmental Protection ("MassDEP"); the Governor of Massachusetts; and to C.L. Hauthaway, as required by Section 304(b)(1)(A) of the CAA, 42 U.S.C. § 7604(b)(1)(A) and Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A).

7.     More than sixty days have passed since notice was served.

8.     This action is not barred by any prior state or federal action to enforce the violations alleged in this complaint.

9. The Commonwealth has an interest in protecting public health, the integrity of the Massachusetts environment, and the related health, safety, economic, recreational, aesthetic, and environmental interest that the environment provides for its residents. The interests of the Commonwealth have been, are being, and will continue to be adversely affected by C.L. Hauthaway's failure to comply with environmental laws, as alleged herein. The relief sought herein will redress the harms to the Commonwealth caused by C.L. Hauthaway's activities. Continuing commission of the acts and omissions alleged herein will irreparably harm the Commonwealth, for which harm it has no plain, speedy, or adequate remedy at law.

10. Venue is proper in the District Court of Massachusetts pursuant to Section 304(c)(1) of the CAA, 42 U.S.C. § 7604(c)(1), and Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district.

## PARTIES

11. Plaintiff is the Commonwealth appearing by and through the Attorney General.

12. The Attorney General is the chief law officer of the Commonwealth, with offices at One Ashburton Place, Boston, Massachusetts. She is authorized to bring this action and to seek the relief requested herein under G.L. c. 12, §§ 3 and 11D.

13. Defendant C.L. Hauthaway is a domestic corporation that operates a coatings and adhesives manufacturing facility in Lynn, Massachusetts.

## STATUTORY BACKGROUND

### Federal Clean Air Act Requirements

14. In 1990, Congress amended the CAA to add Section 112(r), 42 U.S.C. § 7412(r), in response to several catastrophic chemical accidents, including the release of toxic gas from a pesticide plant in Bhopal, India in 1984 that killed thousands of people. This new provision of

3

the CAA mandated a system of comprehensive risk management planning by industrial facilities to reduce or eliminate potential harm to the environment and public health from accidental releases of extremely hazardous chemicals. In 1996, EPA published regulations pursuant to Section 112(r) of the CAA at 40 C.F.R. Part 68 (the "112(r) Regulations").

15.     The 112(r) Regulations cover industrial processes at stationary sources that involve the use, storage, manufacturing, or handling of certain extremely hazardous substances. 40 C.F.R. § 68.3. Stationary sources include facilities that emit or may emit any air pollutant. *See* Sections 112(a) and 111(a) of the CAA, 42 U.S.C. §§ 7412(a)(3), 7411(a)(3).

16.     The 112(r) Regulations require that facilities that are stationary sources with listed substances in excess of threshold quantities prepare and implement risk management programs to prevent and mitigate accidental releases. 40 C.F.R. Part 68.

17.     Section 112(r) requires EPA to promulgate a list of extremely hazardous substances which "in the case of an accidental release, are known to cause or may reasonably be anticipated to cause death, injury, or serious adverse effects to human health or the environment." Congress specifically instructed EPA to include TDI on this list of extremely hazardous substances. *See* Section 112(r)(3); 42 U.S.C. § 7412(r).

18.     In 1994, EPA listed TDI as an extremely hazardous chemical, with a regulatory threshold quantity of 10,000 pounds (lbs.). *See* 40 C.F.R. § 68.130, Tables 1 and 2; 59 Fed. Reg. 4478-01 (Jan. 31, 1994).

19.     Thus, any stationary source facility with more than 10,000 lbs. of TDI in a process is a regulated facility subject to the risk management requirements of Section 112(r) and the Section 112(r) Regulations.

4

20. Owners of facilities subject to the 112(r) Regulations must determine which Program applies to their covered process(es), using the criteria set forth in 40 C.F.R. § 68.10. Facilities are identified by their industrial processes as falling into one of three tiers -- Programs 1, 2, and 3. Programs 2 and 3 are subject to requirements that are more comprehensive than those for Program 1, because, among other things, they have a larger potential for offsite consequences associated with a worst-case accidental release. *See* 40 C.F.R. § 68.10.

21. Each regulated facility must submit to EPA a certified Risk Management Plan pursuant to Section 112(r)(7)(B)(iii) and 40 C.F.R. Part 68, Subpart G. The Risk Management Plan must include, among other things, the company's accidental release prevention and emergency response policies, regulated substances handled, five-year accident history, emergency response program, planned changes to improve safety, worst-case release scenarios, and registration form. *See* 40 C.F.R. Part 68, Subpart G. Facilities subject to Programs 2 and 3 must also prepare a hazard review or process hazard analysis, respectively, addressing the risks associated with those processes and the safeguards in place to control such hazards. *See id.* §§ 68.50, 68.67, 68.170, 68.175.

22. Proactive risk management planning by companies handling significant amounts of extremely hazardous substances lessens the likelihood of accidental releases of those substances. Risk Management Plans also provide essential information to help government agencies and the public understand the hazards at facilities and the steps being taken to address those hazards. The availability of these plans increases the prospects of identifying the most probable high risk or high consequence accidents that may happen in a community and of spreading response resources appropriately.

23. The Risk Management Plan is required to be submitted to EPA no later than the latest of the following dates: June 21, 1999, three years after the date on which such extremely hazardous substance is first listed by EPA pursuant to the 112(r) Regulations, or the date on which the extremely hazardous substance is first present in a process above the threshold quantity. 40 C.F.R. § 68.150.

24. It is a violation of Section 112(r)(7)(E) of the CAA for a person to operate any stationary source in violation of a regulation or requirement established to implement the accident prevention requirements of the Section 112(r). 42 U.S.C § 7412(r)(7)(E).

25. The CAA defines "emission standard or limitation" to include any condition or requirement under Section 112 "without regard to whether such requirement is expressed as an emission standard or otherwise," Section 304(f)(3) of the CAA, 42 U.S.C. § 7604(f)(3), including each and every provision of Section 112(r) and the Section 112(r) Regulations.

26. Any person may commence a civil enforcement action under the CAA against any party "who is alleged to have violated … or to be in violation of [] an emission standard or limitation." Section 304(a) of the CAA, 42 U.S.C. § 7604(a).

27. The Commonwealth is entitled to bring suit under 42 U.S.C. § 7604 because it is a "person" as defined by 42 U.S.C. § 7602(e). Section 304(e) of the CAA, 42 U.S.C. § 7604(e).

28. This Court has authority to enjoin violations of the CAA, and to impose penalties of up to $99,681 per day for each violation of the CAA. *See* Sections 113(b) and 304(a) of the CAA, 42 U.S.C. §§ 7413(b), 7604(a), and 84 Fed. Reg. 2056, 2059 (Feb. 6, 2019).[1]

---

[1] The statutory maximum civil penalty for violations that occurred on or before November 2, 2015 is $37,500 per day, per violation. 40 CFR § 19.4, Table 1.

**Federal Clean Water Act Requirements**

29.     The CWA makes the discharge of pollution into waters of the United States unlawful unless the discharge complies with certain statutory requirements, including the requirement that the discharge be permitted by EPA under the National Pollutant Discharge Elimination System ("NPDES"). *See* Sections 301(a), 402(a), and 402(p) of the CWA, 33 U.S.C. §§ 1311(a), 1342(a), 1342(p).

30.     Polluted stormwater is the leading cause of water quality impairment in Massachusetts. During every rain or snowmelt event, runoff flows over the land surface, picking up potential pollutants such as sediment, nutrients, metals, and petroleum by-products. Polluted stormwater runoff can be harmful to plants, animals, and people.

31.     To minimize polluted stormwater discharges from industrial facilities, EPA has issued a general industrial stormwater permit ("Stormwater Permit") under the NPDES program. EPA first issued the Stormwater Permit in 1995 and reissued the permit in 2000, 2008, and 2015. *See* 60 Fed. Reg. 50804 (Sept. 29, 1995); 65 Fed. Reg. 64746 (Oct. 30, 2000); 73 Fed. Reg. 56572 (Sept. 29, 2008); 80 Fed. Reg. 34403 (June 4, 2015).

32.     Chemical and allied products manufacturing facilities that discharge industrial stormwater to waters of the United States directly or through separate storm sewer systems are subject to the requirements of this Stormwater Permit. Stormwater Permit, Appendix D, pgs. D-1 and D-2.

33.     The Stormwater Permit requires these facilities to, among other things:

        a.     prepare a stormwater pollution prevention plan ("SWPPP") that, among other things, describes the facility and identifies all stormwater outfalls, Stormwater Permit, pg. 31;

7

b.      submit to EPA a Notice of Intent ("NOI") to be covered by the Stormwater Permit that lists all stormwater outfalls by a unique 3-digit code and corresponding latitude and longitude coordinates, Stormwater Permit, Appendix G;

c.      ensure that pollutant control measures minimize pollutants in stormwater discharges, Stormwater Permit, pg. 14;

d.      locate materials, equipment, and activities to contain potential spills, Stormwater Permit, pg. 15;

e.      use structural and non-structural control measures to minimize the discharge of sediment, Stormwater Permit, pg. 17;

f.      evaluate for and eliminate unauthorized non-stormwater discharges, Stormwater Permit, pg. 19;

g.      ensure that stormwater discharges do not cause or have the reasonable potential to cause or contribute to a violation of water quality standards, Stormwater Permit, pg. 20;

h.      implement any applicable sector specific best management practices, Stormwater Permit, pg. 135;

i.      conduct corrective action to expeditiously eliminate excessive stormwater pollution and unauthorized non-stormwater discharges, Stormwater Permit, pgs. 27-29;

j.      conduct routine facility inspections at least quarterly (Stormwater Permit, pg. 22) and quarterly visual assessments (Stormwater Permit, pg. 24) to, among other things, sample and assess the quality of the facility's

8

stormwater discharges, ensure that stormwater control measures required by the permit are functioning correctly and are adequate to minimize pollutant discharge, and timely perform corrective actions when they are not, Stormwater Permit, pgs. 22-26;

k. timely prepare and submit to EPA annual reports that include findings from the facility inspections and visual assessments and the documentation of corrective actions, Stormwater Permit, pgs. 49-50; and

l. comply with any additional Massachusetts requirements, including but not limited to the requirements of the Massachusetts Clean Waters Act and its implementing regulations. Stormwater Permit, pg. 170.

34. Section 505(a)(1) and Section 505(f) of the CWA provide for citizen enforcement actions against any "person," including any individual, corporation, or partnership, for violations of NPDES permit requirements and for unpermitted discharges of pollutants. Sections 505(a)(1), (f), and 502(5), 33 U.S.C. §§ 1365(a)(1) and (f), § 1362(5).

35. The Commonwealth is entitled to bring suit under Section 505 of the CWA, because it is a "person" having an interest which is or may be adversely affected. *See* Section 505(g) of the CWA, 33 U.S.C. § 1365(g).

36. Under Section 505 of the CWA, this Court has authority to enjoin violations of the Stormwater Permit and to impose penalties of up to $54,833 per day for each of violation. *See* Sections 505(a) and 309(d) of the CWA, 33 U.S.C. §§ 1365(a), 1319(d); 40 C.F.R. §§ 19.1 – 19.4; 83 Fed. Reg. 2058 (Feb. 5, 2019).[2]

---

[2] The statutory maximum civil penalty for violations that occurred on or before November 2, 2015 is $37,500 per day, per violation. 40 CFR § 19.4, Table 1.

## STATEMENT OF FACTS

### Description of the C.L. Hauthaway Facility and Activities

37.    C.L. Hauthaway manufactures finishing materials and advanced polymers used by textiles and coatings makers at the Facility. The company also makes coatings resins (polyurethanes), leather finishes (adhesion promoters, basecoat polymers), and textile finishes (flame retardant polymers and compounds). Its polyurethane products are also occasionally made to order. C.L. Hauthaway sells its products within and outside of the United States to companies that manufacture, among other things, flooring, automotive interior plastics, and leather products.

38.    The Facility is immediately adjacent to the Saugus River, within a flood zone, in a densely populated mixed industrial/residential neighborhood.

39.    As shown in the below annotated aerial photograph, the Facility abuts approximately five homes and is within feet of numerous other residential properties.

10



*Source: Google Maps (Nov. 5, 2019)*
*Annotated by Attorney General's Office to show approximate boundaries of Facility*

40.    The neighborhood surrounding the Facility has been identified by the Commonwealth and EPA as an Environmental Justice community because it has the potential to be disproportionately impacted by environmental harms and risks.

41.    The Facility is located within the "Rumney Marshes Area of Critical Environmental Concern." An Area of Critical Environmental Concern (an "ACEC") is a place that receives special recognition and heightened environmental protection and stewardship because of the quality, uniqueness, and significance of its natural and cultural resources. The Rumney Marshes ACEC has been characterized by the United States Fish and Wildlife Service as "one of the most biologically significant estuaries in Massachusetts north of Boston." The area includes approximately 1,000 acres of highly productive saltmarsh, tidal flats, and shallow subtidal

11

channels. An extraordinary variety of birds use the area, and several species state-listed as endangered, threatened, or of special concern are recorded there. These species include the following plants designated as endangered: Andrews' Bottle Gentian, Hairy Wild Rye, Purple Giant Hyssop, the following plants designated as threatened: Hairy Agrimony, Long-styled Sanicle, the following plant designated as of special concern: American Sea-blite, and the following plants on a designated watch-list: Allegheny Buttercup, Lace-grass, Maple-leaf Goosefoot, Showy Orchis, Vetchling, Marsh-pea, White Lettuce, Wild Black Currant, Willow Aster, and Yellow Thistle. The saltmarshes are also vitally important in their capacity to prevent flood damage by providing flood water storage.

42.    MassDEP and EPA have included the area of the Saugus River adjacent to the Facility on the list of impaired waterbodies pursuant to Section 303(d) of the CWA. Section 303(d) requires states to submit to EPA a list of impaired waters for which additional pollutant reduction regulatory measures are necessary. 33 U.S.C. § 1313(d). Water quality in the area of the Facility is impaired by, among other things, oil and grease.

### Inadequate Management of Extremely Hazardous Chemicals

*Extremely Hazardous Chemicals at the Facility*

43.    C.L. Hauthaway's operations involve the use of numerous hazardous chemicals, including TDI.

44.    As discussed above, TDI is listed as a regulated extremely hazardous substance under Section 112(r) of the CAA. In the case of an accidental release, TDI is known to cause or may reasonably be anticipated to cause death, injury, or serious adverse effects to human health or the environment.

45.     TDI is a toxic and highly reactive organic compound used in the manufacture of polyurethane flexible foam and non-foam urethanes. It is highly toxic when inhaled, ingested, or exposed to the skin or eyes. It is also a suspected carcinogen.

46.     TDI is explosive when exposed to heat, and when heated to decomposition it emits highly toxic fumes of carbon monoxide, carbon dioxide, hydrogen cyanide, and nitrogen oxides. TDI reacts with water to release carbon dioxide gas and heat, which may cause containers to rupture and cause harmful vapors to be released.

47.     Because of its toxic and reactive properties, TDI is capable of contaminating water supplies and creating a human health hazard.

*Noncompliance with Chemical Accident Prevention Requirements of CAA*

48.     Based on C.L. Hauthaway's reporting to EPA under the Federal Emergency Planning and Community Right to Know Act, TDI was present at its Facility in amounts exceeding the Section 112(r) threshold, discussed below, of 10,000 pounds. Specifically, the company has reported amounts of TDI exceeding the threshold for at least the three years prior to 2019 (19,772 lbs. in 2018 and 2017, and 13,795 lbs. in 2016).

49.     C.L. Hauthaway has not prepared or submitted to EPA a Risk Management Plan as is required by Section 112(r) of the CAA, 42 U.S.C. § 7412(r), and 40 C.F.R. § 68, Subpart G.

50.     C.L. Hauthaway has not otherwise complied with the accident prevention and planning requirements in 40 C.F.R. Part 68.

51.     C.L. Hauthaway has not determined its program eligibility in accordance with 40 C.F.R. § 68.12.

52.     Because of the Facility's proximity to public receptors, including offsite residences, it is likely that its operations fall within either Program 2 or Program 3.

13

53.     C.L. Hauthaway has not complied with the planning requirements that apply to Program 2 or Program 3 facilities, including but not limited to the requirement to prepare a hazard review (if Program 2) or process hazard analysis (if Program 3) addressing the risks associated with its process and addressing the safeguards in place to control such hazards. *See* 40 C.F.R. §§ 68.50, 68.676, 68.170, and 68.175.

54.     C.L. Hauthaway has operated the Facility while violating Section 112(r) of the CAA, 42 U.S.C. § 7412(r), and 40 C.F.R. § 68, Subpart G.

**Inadequate Control and Monitoring of Industrial Stormwater Discharges**

*Discharges of Industrial Stormwater to the Saugus River*

55.     Areas at the Facility are exposed to precipitation.

56.     Stormwater that falls on the roofs, trucks, equipment, ground surface, storage vessels, and other materials at the Facility becomes contaminated with pollutants.

57.     Some stormwater that falls on the roofs, trucks, equipment, ground surface, storage vessels, and other materials at the Facility that became contaminated with pollutants runs off of the Facility into the Saugus River and/or off of the Facility into catch basins connected with the City of Lynn's municipal storm sewer system on Summer Street, River Street, and/or Canal Street and from there to the Saugus River.

*Failure to Obtain and Comply with the EPA Stormwater Permit*

58.     C.L. Hauthaway has not submitted a Notice of Intent to be covered by the Stormwater Permit.

59.     C.L. Hauthaway has not complied with the terms of the Stormwater Permit. The company has failed to:

14

a.  prepare a SWPPP for the Facility that, among other things, includes the location of all stormwater outfalls in the SWPPP (violation of section 5.2);

b.  submit a "complete and accurate NOI" for the Facility (violation of section 1.2.1);

c.  ensure that pollutant control measures minimize pollutants in its stormwater discharges (violation of section 2.1);

d.  locate materials, equipment, and activities to contain potential spills (violation of section 2.1.2.1);

e.  use structural and non-structural control measures to minimize the discharge of sediment (violation of section 2.1.2.5);

f.  evaluate for the presence of and eliminate all non-stormwater discharges at each Facility (violation of section 2.1.2.9);

g.  ensure that stormwater discharges do not cause or contribute to a violation of water quality standards (violation of section 2.2.1);

h.  implement any applicable sector specific best managemwent practices (violation of section 8.C);

i.  conduct corrective action to expeditiously eliminate excessive stormwater pollution and unauthorized non-stormwater discharges, (violation of section 4.1);

j.  conduct routine and quarterly facility inspections to ensure, among other things, that control measures are functioning correctly and are adequate to minimize pollutant discharges (violation of sections 3.1 and 3.2);

15

    k.   timely prepare and submit to EPA annual reports that include findings from the facility inspections and visual assessments and the documentation of corrective actions (violation of section 7.5); and

    l.   comply with additional state requirements incorporated by reference into the Permit, including the Massachusetts Clean Waters Act and the Massachusetts Wetlands Protection Act (violation of section 9.1.2.1).

**FIRST CAUSE OF ACTION**
**Failure to Submit a Risk Management Plan to EPA:**
**Violations of Section 304(a) of the CAA, 42 U.S.C. § 7604(a).**

60.    The Commonwealth realleges and incorporates by reference the allegations contained in the above paragraphs.

61.    C.L. Hauthaway is a "person" within the meaning of Section 304(a)(1) of the CAA, 42 U.S.C. § 7604(a)(1).

62.    The Commonwealth is a "person" within the meaning of Section 304(a)(1) of the CAA, 42 U.S.C. § 7604(a)(1).

63.    The Facility is a "stationary source" within the meaning of Section 112(r)(2)(c) of the CAA, 42. U.S.C. § 7412(r)(2)(c) and 40 C.F.R. § 68.3.

64.    At all relevant times, C.L. Hauthaway has been the owner and/or operator of the Facility within the meaning of Section 112(a)(9), 42 U.S.C. § 7412(a)(9), and 40 C.F.R. § 68.3.

65.    C.L. Hauthaway's coatings and adhesives manufacturing process using TDI is a "covered process" as defined at 40 C.F.R. § 68.3.

66.    Since at least January 2016, C.L. Hauthaway has had more than the threshold amount of TDI, as set out in 40 C.F.R. § 68.130, in the covered process.

67. C.L. Hauthaway was required, pursuant to 40 C.F.R. § 68.150, to submit a Risk Management Plan to EPA on the date on which TDI was first present in the process above the threshold quantity of 10,000 lbs.

68. As of the date of this Complaint, C.L. Hauthaway has not submitted a Risk Management Plan to EPA.

69. By failing to submit a Risk Management Plan to EPA, C.L. Hauthaway violated and continues to violate Section 112(r)(7)(B)(iii) of the CAA and 40 C.F.R. Part 68, Subpart G.

70. The Risk Management Plan submission requirements in Section 112(r)(7)(B)(iii) of the CAA and 40 C.F.R. Part 68, Subpart G are emission standards or limitations under the CAA for purposes of enforcement under Section 304(a) of the CAA. *See* Sections 112(r)(7)(E) and 304(a) of the CAA, 42 U.S.C. §§ 7412(r)(7)(E), 7604(a).

71. By failing to comply with the Risk Management Plan submission requirements in Section 112(r)(7)(B)(iii) of the CAA and 40 C.F.R. Part 68, Subpart G, the company has violated and continues to violate Section 304(a) of the CAA, 42 U.S.C. § 7604(a).

72. Each of C.L. Hauthaway's violations of the Risk Management Plan submission requirements in Section 112(r)(7)(B)(iii) of the CAA and 40 C.F.R. Part 68 is a separate and distinct violation of an emission standard or limitation under the CAA for each day on which the violation occurred and/or continued. *See* Section 304(a) of the CAA, 42 U.S.C. § 7604(a).

**SECOND CAUSE OF ACTION**
**Failure to Comply With the Section 112(r) Regulations:**
**Violations of Section 304(a) of the CAA, 42 U.S.C. § 7604(a).**

73. The Commonwealth realleges and incorporates by reference the allegations contained in the above paragraphs.

74.     C.L. Hauthaway has not complied with the sections of Subparts A, B, C, D, E, F, and/or H of the Section 112(r) Regulations that apply to its operations, including but not limited to the requirement that it determine its program eligibility under 40 C.F.R. § 68.12, and prepare a hazard review or process hazard analysis under 40 C.F.R. §§ 68.50, 68.676, 68.170, and 68.175.

75.     The sections of Subparts A, B, C, D, E, F, and/or H of the Section 112(r) Regulations that apply to C.L. Hauthaway's operations are emission standards or limitations under the CAA for purposes of enforcement under Section 304(a) of the CAA. *See* Sections 112(r)(7)(E) and 304(a) of the CAA, 42 U.S.C. §§ 7412(r)(7)(E), 7604(a).

76.     By failing to comply with the sections of Subparts A, B, C, D, E, F, and/or H of the Section 112(r) Regulations that apply to C.L. Hauthaway's operations, the company has violated and continues to violate Section 304(a) of the CAA, 42 U.S.C. § 7604(a).

77.     Each of C.L. Hauthaway's violations of the sections of Subparts A, B, C, D, E, F, and/or H of the Section 112(r) Regulations that apply to the company's operations is a separate and distinct violation of an emission standard or limitation under the CAA for each day on which the violation occurred and/or continued.  *See* Section 304(a) of the CAA, 42 U.S.C. § 7604(a).

**THIRD CAUSE OF ACTION**
**Operation of a Facility in Violation of**
**Section 112(r) and the Section 112(r) Regulations:**
**Violations of Section 304(a) of the CAA, 42 U.S.C. § 7604(a).**

78.     The Commonwealth realleges and incorporates by reference the allegations contained in the above paragraphs.

79.     Section 112(r)(7)(E) of the Clean Air Act prohibits the operation of a facility in violation of Section 112(r) or the Section 112(r) Regulations. 42 U.S.C. § 7412(r)(7)(E).

80.     By operating the Facility in violation of Section 112(r) and the Section 112(r)

Regulations, C.L. Hauthaway has violated and continues to violate Section 112(r)(7)(E) of the

Clean Air Act. 42 U.S.C. § 7412(r)(7)(E).

81.     The prohibition against operating a facility in violation of Section 112(r) and the

Section 112(r) Regulations is an emission standard or limitation under the CAA for purposes of

enforcement under Section 304(a) of the CAA. See Sections 112(r)(7)(E) and 304(a) of the

CAA, 42 U.S.C. §§ 7412(r)(7)(E), 7604(a).

82.     By operating the Facility in violation of Section 112(r) and the Section 112(r)

Regulations, the company has violated and continues to violate Section 304(a) of the CAA, 42

U.S.C. § 7604(a).

83.     Each of C.L. Hauthaway's violations of the prohibition against operating a facility

in violation of Section 112(r) and the Section 112(r) Regulations is a separate and distinct

violation of an emission standard or limitation under the CAA for each day on which the

violation occurred and/or continued.  See Section 304(a) of the CAA, 42 U.S.C. § 7604(a).

## FOURTH CAUSE OF ACTION
### Discharges of Industrial Stormwater Without a Federal Stormwater Permit:
### Violations of Section 301(a) of the Federal Clean Water Act, 33 U.S.C. § 1311(a)

84.     The Commonwealth realleges and incorporates by reference the allegations

contained in the above paragraphs.

85.     C.L. Hauthaway is a "person" within the meaning of Section 502(5) of the CWA,

33 U.S.C. § 1362(5).

86.     C.L. Hauthaway's stormwater discharges are "stormwater discharge[s] associated

with industrial activity" within the meaning of 40 C.F.R. § 122.26(b)(14).

19

87.     The Facility falls within the chemicals and allied products sector (Sector "C") as described in the Stormwater Permit. See Stormwater Permit, Appendix D, pgs. D-1 and D-2.

88.     The Saugus River is a "navigable water," within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

89.     By discharging stormwater associated with industrial activity to the Saugus River from the Facility either directly or via catch basins on Summer Street, River Street, and/or Canal Street, C.L. Hauthaway has violated the CWA's prohibition on discharges from point sources not authorized by any NPDES permit. *See* Sections 301(a), 402(a) and 402(p) of the CWA, 33 U.S.C. §§ 1311(a), 1342(a), 1342(p).

90.     Each of C.L. Hauthaway's violations of the prohibition against unpermitted discharges is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), for each day on which the unpermitted discharge occurred and/or continued.

91.     These violations establish an ongoing pattern of failure to comply with the CWA's prohibition against unpermitted discharges.

## FIFTH CAUSE OF ACTION
### Noncompliance with the Federal Stormwater Permit:
### Violations of Section 301(a) of the Federal Clean Water Act, 33 U.S.C. § 1311(a)

92.     The Commonwealth realleges and incorporates by reference the allegations contained in the above paragraphs.

93.     C.L. Hauthaway has violated the Stormwater Permit by failing to implement its requirements, as set forth in paragraph 62, above.

94.     Each of C.L. Hauthaway's violations of each of the requirement of the Stormwater Permit is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C.

§ 1311(a), for each day on which the violation occurred and/or continued. *See also* Section 505(a)(1) and (f) of the CWA, 33 U.S.C. §§ 1365(a)(1) and (f).

95.     These violations establish an ongoing pattern of failure to comply with the Stormwater Permit's requirements.

## RELIEF REQUESTED

WHEREFORE, the Commonwealth respectfully requests that this Court grant the following relief:

1.     Require C.L. Hauthaway to prepare and submit to EPA a Risk Management Plan that complies with the requirements of Section 112(r) of the CAA, 42 U.S.C. 7412(r) and 40 C.F.R. §§ 68.12 and Subpart G, and to otherwise comply with applicable requirements of Section 112(r) of the CAA and 40 C.F.R. Part 68;

2.     Require C.L. Hauthaway to either eliminate stormwater discharges to the Saugus River or obtain coverage under and comply with EPA's Federal Stormwater Permit;

3.     Order C.L. Hauthaway to pay civil penalties of up to:

    a.  $37,500 per day for each violation of the CAA that occurred on or before November 2, 2015 and up to $99,681 per day for each violation of the CAA that occurred after November 2, 2015, pursuant to Sections 113(b) and 304(a) of the CAA, 42 U.S.C. §§ 7413(b), 7604(a), 40 CFR § 19.4, and 84 Fed. Reg. 2056, 2059 (Feb. 6, 2019);

    b.  $37,500 per day for each violation of the CWA that occurred on or before November 2, 2015 and up to $54,833 per day for each violation of the CWA that occurred after November 2, 2015, pursuant to Sections 309(d) and 505(a)

of the CWA, 33 U.S.C. §§ 1319(d), 1365(a), 40 CFR § 19.4, and 84 Fed. Reg. 2058 (Feb. 6, 2019);

4.    Order C.L. Hauthaway to take appropriate actions to restore the quality of protected resource areas and waterways impaired by its activities;

5.    Award the Commonwealth's costs (including reasonable investigative, attorney, witness, and consultant fees) as authorized by Section 304(d) of the CAA, 42 U.S.C. § 7604(d), and Section 505(d) of the CWA, 33 U.S.C. § 1365(d); and

6.    Award any such other and further relief as this Court may deem appropriate.

Dated: December 4, 2020

**Respectfully submitted,**

COMMONWEALTH OF MASSACHUSETTS

By its attorneys,

MAURA HEALEY
ATTORNEY GENERAL

*/s/ Nora J. Chorover*
Nora J. Chorover (Bar No. 547352)
Special Assistant Attorney General
Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, Massachusetts 02108
Tel: (617) 727-2200, ext. 2436
Nora.Chorover@mass.gov

22