UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS,<br>　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>C. L. HAUTHAWAY & SONS CORP.,<br><br>　　　　　　　Defendant. | Case No.1:20-cv-12163 |

**CONSENT DECREE**

WHEREAS, C.L. Hauthaway & Sons Corp. ("C.L. Hauthaway") operates a coatings and adhesives manufacturing facility adjacent to the Saugus River at 638 Summer Street, Lynn, Massachusetts (the "Facility");

WHEREAS, the Commonwealth of Massachusetts ("Commonwealth"), acting through the Office of the Attorney General ("Attorney General's Office"), alleges in its Complaint that C.L. Hauthaway operates the Facility without, among other things, preparing a risk management plan to reduce or eliminate the potential for releases of toluene diioscyanate ("TDI") in violation of the chemical accident prevention requirements of the Federal Clean Air Act, 42 U.S.C. § 7412(r) ("Section 112(r)") and discharged industrial stormwater into the Saugus River without complying with the federal stormwater permit issued by the United States Environmental Protection Agency ("Stormwater Permit"), in violation of the Federal Clean Water Act, 33 U.S.C. § 1331(a) (the "Clean Water Act");

WHEREAS, the Massachusetts Fire Code requires certain facilities having certain highly hazardous chemicals to comply with federal chemical safety requirements, 527 C.M.R § 1.05(60.8.5.1.5);

1

WHEREAS, on January 13, 2020, the Attorney General's Office provided notice of the alleged violations and of the Attorney General's Office's intention to file suit against C.L. Hauthaway to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region 1; the Massachusetts Department of Environmental Protection; the Governor of Massachusetts, and to the Company, pursuant to Section 304(b)(1)(A) of the Federal Clean Air Act and Section 505(b)(1)(A) of the Federal Clean Water Act. *See* 42 U.S.C. § 7604(b)(1)(A); 33 U.S.C. § 1365(b)(1)(A);

WHEREAS, today the Attorney General filed a complaint against C.L. Hauthaway in the United States District Court, District of Massachusetts;

WHEREAS, C.L. Hauthaway denies the allegations in the complaint;

WHEREAS, following receipt of the January 13, 2020 notice, C.L. Hauthaway has taken certain steps, including retaining a third party environmental consulting firm, to assist C.L. Hauthaway in upgrading its inventory management system; obtaining coverage under the stormwater permit, and performing a Program Level 3 Risk Management Plan ("RMP");

WHEREAS, C.L. Hauthaway anticipates that these steps, together with the implementation of the measures set forth herein and in both C.L. Hauthaway's RMP and C.L. Hauthaway's Stormwater Pollution Prevention Plan ("SWPPP"), will enable the company to comply with the requirements of the Federal Clean Water Act and the Federal Clean Air Act;

WHEREAS, the Attorney General's Office and C.L. Hauthaway have reached an agreement to resolve the ligation; and

WHEREAS, this Consent Decree shall be submitted to the United States Department of Justice for the 45-day statutory review period, pursuant to 33 U.S.C. § 1365(c) and 42 U.S.C. § 7604(c)(2).

NOW THEREFORE, based on the Joint Motion of the Parties for Entry of this Consent Decree, and before taking any testimony and without the adjudication of any issues of fact or law except as provided in Section 1 (Jurisdiction and Venue), it is ADJUDGED, ORDERED AND DECREED, as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a)(1)(A) of the Federal Clean Water Act, 33 U.S.C. § 1365(a)(1)(A), Section 304(a) of the Federal Clean Air Act, 42 U.S.C. § 7604(a), and 28 U.S.C. § 1331 (an action arising under the laws of the United States).

2. Venue is proper in the District of Massachusetts pursuant to Section 505(c)(1) of the Federal Clean Water Act, 33 U.S.C. § 1365(c)(1) and Section 304(c)(1) of the Federal Clean Air Act, 42 U.S.C. § 7604(c)(1).

3. The Complaint alleges facts that, if proven, would constitute good and sufficient grounds for the relief set forth in this Consent Decree.

## II. EFFECTIVE DATE

4. The effective date of this Consent Decree ("Effective Date") shall be when the Court enters the Consent Decree on the docket.

## III. PARTIES BOUND

5. This Consent Decree shall constitute a binding agreement between the parties, and C.L. Hauthaway consents to its entry as a final judgment by the Court and waives all rights of appeal upon its entry on the docket. If the Court declines to enter this Consent Decree on any ground except one related to form, this Consent Decree is voidable at the option of any party within fourteen (14) days of the Court's decision. If, on the other hand, the Court determines that

substantive modifications to this Consent Decree are necessary prior to the Court's entry of it, the parties shall enter into good faith negotiations to discuss the modifications, and this Consent Decree shall be void unless the Commonwealth and C.L. Hauthaway agree otherwise in writing within fourteen (14) days of the Court's decision.

6. The provisions of this Consent Decree shall apply to and bind C.L. Hauthaway and any person or entity acting by, for, or through C.L. Hauthaway, including C.L. Hauthaway's managers, directors, officers, supervisors, employees, agents, servants, attorneys-in-fact, successors, and assigns, and those persons in active concert or participation with C.L. Hauthaway who receive notice of this Consent Decree.

7. C.L. Hauthaway shall provide a true copy of this Consent Decree to all of its managers, directors, officers, supervisors, employees, and agents whose duties might include compliance with any provision of this Consent Decree. C.L. Hauthaway shall also provide a copy of this Consent Decree to any contractor retained by it to perform work required under this Consent Decree and shall condition any such contract on the contractor's performance of the work in compliance with the terms of this Consent Decree.

8. For two (2) years following the Effective Date, no change or transfer in ownership, management, or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve C.L. Hauthaway or the company's managers, officers, directors, agents, and/or servants of any obligation under this Consent Decree. At least thirty (30) days prior to any such change or transfer of ownership, management, or operation of the Facility that occurs within two (2) years of the Effective Date, C.L. Hauthaway shall provide a copy of this Consent Decree to the proposed transferee or new manager or operator and shall simultaneously provide written notice of the prospective change or transfer in ownership,

management, or operation of the Facility, together with a copy of the proposed written change or transfer agreement, to the Attorney General's Office in accordance with Section XI (Notices) of this Consent Decree. Any attempt to change or transfer ownership, management, or operation of the Facility without complying with this paragraph shall constitute a violation of this Consent Decree.

9. C.L. Hauthaway shall not violate this Consent Decree, and shall not allow its officers, directors, agents, servants, attorneys-in-fact, employees, successors, assigns, or contractors to violate this Consent Decree. In any action to enforce this Consent Decree, C.L. Hauthaway shall not raise as a defense the failure by any of C.L. Hauthaway's managers, directors, officers, supervisors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

10. In addition to any relief specifically provided in this Consent Decree, C.L. Hauthaway understands and agrees that violations of this Consent Decree may be punishable by contempt pursuant to an appropriate civil contempt proceeding.

## IV. PAYMENTS

11. C.L. Hauthaway shall pay to the City of Lynn the sum of two hundred and forty thousand dollars ($240,000) for projects to improve water quality in the City of Lynn within the Saugus River watershed. C.L. Hauthaway's payment shall be made in six (6) quarterly installments of forty thousand dollars ($40,000) each, starting on the first business day of the calendar quarter after the Effective Date of this Consent Decree and continuing to be due on the first business day of each of the next five calendar quarters thereafter by certified check, treasurer's check, or bank check and sent to the City of Lynn, Attn: Elyse Fannon, City Treasurer, 3 City Hall Sq. Room 206, Lynn, MA 01901. A copy of each check shall be

contemporaneously provided by C.L. Hauthaway to the Commonwealth in accordance with the notice provision of Section XI (Notices), below.

12. Within fifteen (15) days of the Effective Date C.L. Hauthaway shall reimburse the Attorney General's Office in the amount of fifty thousand dollars ($50,000) to defray the Attorney General's Office's costs, including attorney fees, incurred in connection with its work on this matter. Payment should be made by Electronic Funds Transfer ("EFT") to the Commonwealth of Massachusetts in accordance with current EFT procedures, using the following account information:

COMMONWEALTH OF MASSACHUSETTS, OFFICE OF ATTORNEY GENERAL


and shall include the following payment information: "*EPD, Commonwealth v. C.L. Hauthaway – Costs.*" Any payments received by the Commonwealth after 4:00 P.M. (Eastern Time) will be credited on the next business day. At the time of payment, C.L. Hauthaway shall send notice that such payment has been made to the Commonwealth by electronic mail in accordance with the notice provision of Section XI (Notices), below.

13. Within fifteen (15) days of the Effective Date C.L. Hauthaway shall reimburse the Attorney General's Office in the amount of twelve thousand dollars ($12,000) to defray the Attorney General's Office's costs of monitoring C.L. Hauthaway's compliance with the Consent Decree. Payment should be made by Electronic Funds Transfer ("EFT") to the Commonwealth of Massachusetts in accordance with current EFT procedures, using the following account information:

COMMONWEALTH OF MASSACHUSETTS, OFFICE OF ATTORNEY GENERAL



and shall include the following payment information: "*EPD, Commonwealth v. C.L. Hauthaway – Monitoring.*" Any payments received by the Commonwealth after 4:00 P.M. (Eastern Time) will be credited on the next business day. At the time of payment, C.L. Hauthaway shall send notice that such payment has been made to the Commonwealth by electronic mail in accordance with the notice provision of Section XI (Notices), below.

## V. INJUCTIVE RELIEF

14. C.L. Hauthaway agrees to operate the Facility in compliance with the applicable provisions of the chemical accident prevention requirements of the Federal Clean Air Act, including but not limited to, the provisions requiring completion and submission of a Risk Management Plan at Program Level 3. *See* 40 C.F.R. §§ 68.12 to 68.185. The Process Hazard Analysis in the Risk Management Plan shall address, among the other elements, the potential effects of climate change on the storage and handling of chemicals at the Facility, particularly given its location in a flood zone.

15. C.L. Hauthaway agrees to implement a physical inventory reporting system that will enhance inter-departmental communication and help ensure the submission of accurate Tier II forms required under Section 312 of the Emergency Planning and Community Right to Know Act and compliance with 40 C.F.R. Part 68.

16. C.L. Hauthaway agrees to operate the Facility in compliance with the applicable requirements of the Stormwater Permit, including any amendments thereto, and with the Federal Clean Water Act.

## VI. FACILITY ACCESS AND SUBMISSION OF RECORDS

17. C.L. Hauthaway shall permit the Attorney General's Office to visit the Facility during normal daylight business hours during each year for the two (2) years following the Effective Date, provided that the Attorney General's Office provide at least twenty-four (24) hours of prior notice. During any site visit, the Attorney General's Office shall have access to and permission to copy any documentation required to be kept on site by the Stormwater Permit or the RMP and may collect samples and take photos at the Facility.

18. C.L. Hauthaway shall allow the Attorney General's Office or its designated representative to visit the Facility twice during the two-year monitoring period to assess the company's compliance with Section 112(r) and the Industrial Stormwater Permit. C.L. Hauthaway shall provide the Attorney General's Office with unimpeded access to the whole facility and any documents relating to inventory of Tier II chemicals, compliance with Section 112(r) of the Clean Air Act, and the Industrial Stormwater Permit. C.L. Hauthaway shall also permit the Attorney General's Office to take photographs and videos during the site visit.

19. C.L. Hauthaway shall provide the Attorney General's Office with access to documents relating to the inventory of Tier II chemicals and compliance with Section 112(r) of the Clean Air Act within seven (7) days of C.L. Hauthaway's receipt of a written request by the Attorney General's Office.

20. For a period of two (2) years following the Effective Date, C.L. Hauthaway shall provide the Attorney General's Office with the following documents in accordance with Section XI (Notices), below:

    a. Copies of all Tier II forms submitted to EPA, the Commonwealth of Massachusetts, and/or the City of Lynn.

    b. Copies of all documents C.L. Hauthaway submits to EPA, the Commonwealth of Massachusetts, and/or the City of Lynn concerning C.L. Hauthaway's stormwater controls or the quality of C.L. Hauthaway's stormwater discharges, including but not limited to all documents and reports submitted as required by the Stormwater Permit. Such documents and reports shall be sent to the Attorney General's Office on the same day that they are submitted to the governmental entity.

    c. All maintenance records for the Facility's stormwater pollution control systems. Maintenance records will be provided within seven (7) days of C.L. Hauthaway's receipt of a written request by the Attorney General's Office.

    d. Timely written notice of any planned or completed changes to C.L. Hauthaway's stormwater control measures, with dates of anticipated or completed changes.

    e. Current copies C.L. Hauthaway's SWPPP within five (5) days of a request by the Attorney General's Office.

    f. Laboratory reports and analytical results of stormwater sampling performed by or for the company within seven (7) days of receiving the reports.

21. Any information provided by C.L. Hauthaway may be used by the Commonwealth in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

22. The Consent Decree in no way limits or affects any right of entry and inspection or any right to obtain information held by the Commonwealth of Massachusetts or any of its branches, departments, agencies, or offices pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of the company to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## VII. INTERESTS AND COLLECTIONS

23. If any payment required pursuant to this Consent Decree is late or not made, C.L. Hauthaway shall pay interest on any overdue amount for the period of such nonpayment at the rate of twelve percent (12%) per annum pursuant to G.L. c. 321 § 6B, computed monthly, and shall pay all expenses associated with collection by the Commonwealth of the unpaid amounts and interest for any period of nonpayment after the payment obligation becomes due, including reasonable attorney fees.

## VIII. EFFECT OF CONSENT DECREE

24. Upon compliance by C.L. Hauthaway with the requirements of this Consent Decree, (a) this Consent Decree shall resolve C.L. Hauthaway's liability for the specific legal claims alleged against it in the Complaint, and (b) the Commonwealth shall release C.L. Hauthaway from liability for the specific legal claims alleged against it in the Complaint. Notwithstanding the foregoing, the Commonwealth expressly reserves all claims for injunctive

relief for violations of all the statutes and regulations referred to in the Complaint, whether related to the specific legal claims resolved by the Consent Decree or otherwise.

25. Nothing in this Consent Decree (a) shall bar any action by the Commonwealth on any legal claim not specifically pleaded in the Complaint or for any violations not revealed to the Commonwealth; (b) shall be deemed to excuse non-compliance by C.L. Hauthaway, or any of the persons or entities otherwise bound by this Consent Decree with any law or regulation; or (c) shall preclude a separate or ancillary action by the Commonwealth to enforce the terms of this Consent Decree or any permit or other approval issued by the Massachusetts Department of Environmental Protection or EPA relative to the Facility.

26. This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. C.L. Hauthaway is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and C.L. Hauthaway's compliance with this Consent Decree shall not be a defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The Attorney General's Office does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that C.L. Hauthaway's compliance with any aspect of this Consent Decree will result in compliance with provisions of any federal, state, or local law, regulation, or permit.

27. Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Decree.

### IX. DISPUTE RESOLUTION

28. If the Attorney General's Office has reason to believe that C.L. Hauthaway may be in violation of this Consent Decree, the Attorney General's Office may request, in writing, that C.L. Hauthaway meet and confer within seven (7) business days of receiving written notification of such

request from the Attorney General's Office, for the purpose of determining whether a violation has occurred and developing a mutually agreed upon plan, including implementation dates, to resolve the dispute. If the parties fail to meet and confer, or the meet and confer does not resolve the dispute and result in a mutually agreed upon plan, the Commonwealth shall be entitled to pursue applicable remedies, including filing a motion for available judicial relief from the Court.  Nothing in this paragraph prevents the Commonwealth from seeking judicial relief without first requesting that C.L. Hauthaway meet and confer.

## X. MISCELLANEOUS

29. C.L. Hauthaway understands and agrees that, pursuant to 11 U.S.C. § 523(a)(7), the costs or sums that C.L. Hauthaway may be required to pay under this Consent Decree are not subject to discharge in any bankruptcy.

30. C.L. Hauthaway shall pay all expenses, including reasonable attorney fees and costs, incurred by the Commonwealth in the enforcement of this Consent Decree against it.

31. Nothing in this Consent Decree shall prevent C.L. Hauthaway from taking any action otherwise required by law.

32. The titles in this Consent Decree have no independent legal significance and are used merely for the convenience of the parties.

33. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or State or Federal holiday, the period shall run until the close of business on the next business day.

34. C.L. Hauthaway is responsible for complying with this Consent Decree and is liable for violations of this Consent Decree.

35. Signature of the parties transmitted by scanning and email are binding.

## XI. NOTICES

36.     Unless otherwise specified in this Consent Decree, notices and submissions required by this Decree shall be made in writing by email to the following addresses:

>  For the Attorney General's Office and the Commonwealth:
>
>  Nora J. Chorover
>  Special Assistant Attorney General
>  Environmental Protection Division
>  Office of the Attorney General
>  One Ashburton Place, 18th Floor
>  Boston, MA 02108
>  Nora.chorover@mass.gov
>
>  For C.L. Hauthaway:
>
>  Ronaldo Rauseo-Ricupero
>  Nixon Peabody LLP
>  Exchange Place
>  53 State Street
>  Boston, MA 02109
>  rrauseoricupero@nixonpeabody.com

or, to such other place or to the attention of such other individual as a party may from time to time designate by written notice to the other parties to this Consent Decree.

## XII. INTEGRATION

37.     Except as expressly set forth in this Consent Decree, this Consent Decree sets forth all of the obligations of the parties and represents the complete and exclusive statement of the parties with respect to the terms of the settled agreement embodied by this Consent Decree; any other representations, communications, or agreements by or between parties shall have no force and effect.

## XIII. MODIFICATION

38. The terms of this Consent Decree may be modified only by a subsequent written agreement signed by the parties. Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only by written approval of the parties and the approval of the Court. The Commonwealth's decision to extend a deadline in this Consent Decree shall not constitute a material change for purposes of this Paragraph.

## XIV. AUTHORITY OF SIGNATORY

39. The person signing this Consent Decree on behalf of C.L. Hauthaway acknowledges: (a) that he or she has personally read and understands each of the numbered Paragraphs of this Consent Decree, including any Appendices attached to it; (b) that, to the extent necessary, C.L. Hauthaway's managers, directors, officers, and shareholders have consented to C.L. Hauthaway entering this Consent Decree and to its entry as a Final Judgment; and (c) that he or she is authorized to sign and bind C.L. Hauthaway to the terms of this Consent Decree.

## XV. RETENTION OF JURISDICTION

40. The Court shall retain jurisdiction over this case for purposes of resolving disputes that arise under this Consent Decree, entering orders modifying this Consent Decree, or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVI. FINAL JUDGMENT

41. Upon approval and entry of this Consent Decree by the Court this Consent Decree shall constitute a Final Judgment of the Court.

Office of the Attorney General

By:   Nora J. Chorover, SAAG                                Dated: *12/2/2020*

*/s/ Nora J. Ch*
_____

C.L. Hauthaway & Sons Corp.

By:   Theodore Johnson, Vice President/General Manager     Dated: 11/30/20

*/s/*
_____

IT IS SO ORDERED. JUDGMENT is hereby entered in accordance with the foregoing.

By the Court:

_____

United States District Court

Dated: _____

15